```
                                                           FILED
       IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS          JAN 2 0 2006
                 EASTERN DIVISION
                                              JUDGE HARRY D. LEINENWEBER
UNITED STATES OF AMERICA,                      U.S. DISTRICT COURT JUDGE

                    Plaintiff,
                                              Case No. 05 CR 485-6
    v.
                                              Hon. Harry D. Leinenweber
JAVIER HERNANDEZ,

                    Defendant.
```

## MEMORANDUM OPINION AND ORDER

Defendant Javier Hernandez (hereinafter, "Defendant" or "Hernandez") filed with the Court two Motions to Suppress: "Motion One," to suppress phone conversations and derivative evidence, and "Motion Two," to suppress a quantity of heroin, cocaine, car keys, and other evidence seized at an apartment located at 8459 West Cermak Road, Riverside, Illinois. Defendant has very belatedly also filed a "verified Amended Motion." This is a drug conspiracy case and for the following reasons, both motions, as amended, **are denied.**

### I. MOTION ONE

In Motion One, Defendant moves to suppress all taped communications and derivative evidence resulting from government intercepted phone conversations pursuant to an alleged unlawfully issued warrant extension on May 18, 2005. Judge Kocoras issued the underlying 30-day warrant to intercept phone conversations in connection with a suspected drug conspiracy on April 20, 2005. The

warrant required that the surveillance "be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation."

Defendant suggests that on May 18, 2005, when the government sought to extend the warrant, it used inaccurate information concerning Defendant Hernandez to secure the extension. Defendant points to intercepted conversations where he placed gambling bets on sports games with co-Defendant George Prado (hereinafter, "Prado"). He argues that the government used these irrelevant conversations to secure the improper extension by stating that Hernandez and Prado were engaged in an illegal gambling business in violation of 18 U.S.C. § 1955. According to Defendant, the content of these conversations, however, implied no illegal activity and that he was merely a "bettor."

The government, on the other hand, paints a different picture of the warrant extension. During the initial 30-day period the government intercepted numerous conversations between Hernandez, also referred to as "Harvey," and Prado involving the sale and distribution of drugs. For example, on April 25, 2005, Hernandez called Prado to obtain 300 grams of heroin. (Gov't Res., Exh. C). Some of the intercepted phone calls involving Hernandez discussed both drugs and gambling. (See Gov't Res., Exh. D (May 5, 2005 conversation)). Other calls, however, involved only gambling or

discussions irrelevant to the drug conspiracy. Pursuant to the warrant, Government agents were instructed minimize the calls that were "clearly non-pertinent or over two minutes."

The government reported to Judge Kocoras at 10 and 20 days after the warrant was issued that the gambling conversations with Prado and Hernandez were difficult to minimize because of Hernandez's involvement in the drug conspiracy and the mixed subject matter of many of the phone calls. On May 18, 2005, the government applied for and obtained authorization to continue intercepting phone calls pertaining to drug activity for another 30 days and to expand the scope to include potential illegal gambling activities.

The Court first points out that the government did not indict Defendant or any of his co-Defendants on any illegal gambling charges, specifically § 1955. Therefore, the conversations relating to gambling may be more appropriately addressed in an evidentiary Motion in Limine dealing with the admissibility and relevance of these conversations in connection with the drug-related charges. However, Defendant has filed a Motion to Suppress and the Court must deal with that Motion accordingly.

The warrant required the government to properly minimize irrelevant phone conversations. The government's 10 day and 20 day reports, along with FBI Agent Jay C. Emigh's May 18, 2005 affidavit and transcripts of the intercepted phone conversations indicate

that any phone conversations involving solely gambling were properly minimized. Either the government agents determined the unrelated nature of the call and minimized the conversation, or the conversation involved both gambling and drugs and was so intertwined that minimization was not practicable. In both situations, the agents complied with the minimization requirements of 18 U.S.C. § 2528(5) and the warrant itself. *See United States v. Scott*, 436 U.S. 128, 140 (1978)(stating that "the statute does not forbid the interception of all non-relevant conversations," but that "agents conduct surveillance in such a manner" that is reasonable under the circumstances). The calls at issue involved conversations between Prado and Hernandez, both of whom also were involved in conversations concerning the alleged drug conspiracy.

The government's actions conformed with its obligations under the warrant by taking steps to reduce the interception of conversations that were not the subject of the warrant. *See United States v. Williams*, 737 F.2d 594, 604-05 (7th Cir. 1984); (*see also* Def. Mtn., Exhs. (including transcripts of intercepted conversations where the transcript included only a few summary words and clearly was labeled "minimized")). Accordingly, when FBI Agent Emigh presented the May 18, 2005 affidavit to Judge Kocoras supporting an extension of the warrant on probable cause of illegal drug activity and illegal gambling operations involving at least Prado, Hernandez, and Anthony C. Ritacco, the government presented

legally intercepted phone conversations in support of their application for an extension of the warrant in both time and scope. (*See* Gov't Res., Exh. F at 27-34).

Defendant does not present any evidence to imbue that any of the statements included in the government's affidavit concerning gambling activities in support of the extended warrant application were "patently false" or "untruthful." (*See* Def. Mtn. at 2, ¶¶ 4 and 6). The affidavit included Hernandez's betting activities revealed in the intercepted conversations, and there is no indication that this information was not properly considered by the court at that time.

Defendant argues that he was merely a "bettor" and therefore could not be involved in a gambling enterprise. However, a "bettor" makes bets with a "book maker." Consequently, there was a basis to suspect an illegal gambling enterprise, so the statement made to Judge Kocoras was not "obviously" an intentional lie. Accordingly, Defendant's Motion One **is denied**.

## II. **MOTION TWO**

Motion Two concerns the June 8, 2005 search and seizure of an apartment located on the third floor of 8459 West Cermak Road, Riverside, Illinois. Defendant argues that although he opened the door to the apartment and the government agents had a proper warrant for his arrest, they had no authority to search the premises and therefore, the seized evidence must be suppressed.

Defendant adds that the search of an automobile violated the Fourth Amendment where the keys were seized while searching the apartment. Defendant "must present definite, specific, detailed, and nonconjectural facts that justify relief before a district court will grant a suppression hearing." *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). Defendant has not done so in his two-page motion. For all the reasons stated in the government's response, including lack of standing, proper seizure incident to arrest, and inevitable discovery, Motion Two **is denied**.

### III. **AUTOMOBILE SEARCH**

The automobile search falls under the category of inevitable discovery and the drugs discovered in the automobile (a Nissan Sentra) are therefore admissible. The Nissan's contents would have been discovered during an inventory search of the automobile after it was forfeited because agents observed it being used in multiple drug transactions. (*See* Gov't Res., Exhs. D & K). In addition, Defendant does not hold title to the Nissan (*Id.*, Exh. E) and does not present any facts to assert a property or possessory interest in it. Therefore, he has not established that he has standing to challenge the search and seizure of the automobile. *See Rakas v. Illinois*, 439 U.S. 128, 148 (1978).

### IV. **APARTMENT SEARCH AND SEIZURE**

Defendant also has not established that he has standing to challenge the search and seizure of the West Cermak Road apartment.

Defendant's observed residence was 1439 South 59th Street, Second Floor, Cicero, Illinois, and his listed address was 3339 West LeMoyne, Chicago, Illinois. (*See* Gov't Res., Exh. L). Further, he has indicated that "he did not live in the [W. Cermak Road] apartment and was just staying there." (Gov't Res., Exh. G, ¶ 4). Defendant belatedly filed an affidavit indicating he was on the premises with the consent of the owner and had, on occasion, stayed overnight. He cites *Minnesota v. Olson*, 495 U.S. 91 (1990). However, as explained in *Olson*, an overnight guest has an expectation of privacy because at night, while asleep, a person is most vulnerable. Defendant does not make the assertion that he was, in fact, an overnight guest at the time.

Defendant answered the door of the apartment on June 8, 2005, and agents arrested him pursuant to a properly issued warrant. Thereafter, the government agents conducted a lawful protective sweep of the residence incident to Defendant's arrest, which "revealed a box of drugs, [observed by agents in previous surveillance,] and a bag of money in plain view in a bedroom as well as a gun under a couch cushion that was within grabbing distance of the defendant at the time of the arrest." (Gov't Res. at 2, 6); *United States v. Barker*, 27 F.3d 1287, 1291 (7th Cir. 1994).

Defendant argues that he was arrested in the doorway so the protection sweep was not necessary. But the fact that a gun was

found within "grabbing distance" belies that assertion. As pointed out in *Crooker v. Metallo*, 5 F.3d 583, 585 (1st Cir. 1993), cited by Defendant, police have a right to conduct a limited search for weapons and possibly yet undiscovered individuals.

### V. CONCLUSION

For all the reasons stated herein, Defendant's two Motions to Suppress **ARE DENIED**.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: January 20, 2006