IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | Case No. 1:05-cr-00485-6 |
| v. | Honorable Sunil R. Harjani |
| JAVIER HERNANDEZ, | |

**MEMORANDUM OPINION AND ORDER**

In November 2011, another judge in this district sentenced Javier Hernandez to 151 months of imprisonment after he pled guilty to four counts of drug trafficking. Hernandez was also sentenced in January 2007 to 360 months in prison for conspiracy to distribute crack cocaine in the Central District of Illinois. His Northern District of Illinois sentence was later reduced to 121 months, with 91 months to run concurrently to his sentence in the Central District of Illinois and 30 months to run consecutive. Hernandez now asks this Court to reduce his 30-month consecutive sentence to one-day plus time served. For the reasons stated below, Hernandez's motion [521] is denied.

**Background**

Hernandez has two sentences relevant to his request, one in the Northern District of Illinois and one in the Central District of Illinois. For his Northern District of Illinois case, Hernandez was arrested and arraigned in a multi-defendant and multi-count indictment on August 23, 2005. [521] at 2–3. Hernandez was charged with one violation of 21 U.S.C. § 846, and three violations of 21 U.S.C. § 841(a)(1). [526] at 2. Count 1 alleged that Hernandez and others conspired to possess with intent to distribute more than one kilogram of heroin. *Id.* Count 12 alleged that Hernandez distributed approximately 2 kilograms of cocaine on May 28, 2005. *Id.* Count 17 alleged that Hernandez possessed with intent to distribute approximately 18.2 kilograms of mixtures containing cocaine on June 8, 2005. *Id.* Count 18 alleged that Hernandez possessed with intent to distribute approximately 40.2 grams of heroin on June 8, 2005. *Id.* Hernandez pled guilty on January 20, 2006, to Counts 1, 12, 17, and 18 of the indictment. [521] at 3. On November 16, 2011, Hernandez was sentenced to 151 months in prison, 121 months to run concurrently to his sentence in the Central District of Illinois, and 30 months to run consecutively. *Id.* This sentence was later reduced to 121 months, with 91 months concurrent and 30 months consecutive to the sentence in the Central District of Illinois. *Id.*

In the Central District of Illinois, Hernandez appeared for arraignment on September 9, 2005, and was charged with one count of conspiracy to distribute a controlled substance. *Id.* Hernandez pled guilty on August 16, 2006, and was sentenced to 360 months in prison on January 8, 2007. *Id.* This sentence was reduced to 324 months.

On June 2, 2025, Hernandez filed the present motion for a reduction of his sentence.[1] As of the filing of the motion, Hernandez has served the equivalent of 23 years and five months. [521] at 2.

## Legal Standard

The court may consider a modification to an imposed term of imprisonment on a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). Once the exhaustion requirements are met, there is a two-step process for evaluating these claims. First the defendant must "identify an 'extraordinary and compelling' reason warranting a sentence reduction[.]" *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). Then, after finding such a reason, the court considers "any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.* A court may consider the factors in combination, even when one alone is insufficient. *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023). Hernandez "bears the burden of establishing extraordinary and compelling circumstances." *United States v. Barbee*, 25 F.4th 531, 532 (7th Cir. 2022) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)).

## Discussion

Hernandez argues he should receive a reduction of his sentence for several reasons including: (1) the death of his mother and siblings, (2) his age (60 years old) and health issues, (3) the harsh prison conditions since the COVID pandemic, and (4) his rehabilitation efforts and low risk of recidivism. Hernandez also asserts that the Section 3553(a) factors support the reduction. The government contends that Hernandez's request should be denied because he failed to exhaust his administrative remedies and because there is no extraordinary and compelling reason to consider his sentence reduction.

### I. Exhaustion

Before addressing the merits of Hernandez's claim, the Court must consider whether he properly exhausted his administrative remedies. "[T]he exhaustion requirement in § 3582(c)(1)(A) is an affirmative defense, not a jurisdictional prerequisite, so the government will lose the benefit of the defense if it fails to properly invoke it." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (citing *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020)). As the government raised the defense, it is properly before the Court.

Relief under § 3582(c)(1)(A) is only available on the motion of a defendant "after the defendant has fully exhausted all administrative rights . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). The Seventh Circuit has held that this is a mandatory process, which must be implemented before addressing the merits of the claim. *Sanford*, 986 F.3d at 782.

---

[1] On March 3, 2025, Hernandez made a *pro se* request for compassionate release, which was later struck after his attorney indicated they would be supplementing the filing. [517].

Hernandez's motion states that he "has satisfied the exhaustion requirement" and points to the attached Exhibit 1, which he purports is his "submission of a sentence reduction request to the Bureau of Prisons and the Bureau of Prisons' denial of that request[.]" [521] at 4. The government argues that despite Defendant's representation, the exhibit only includes his initial request without any response from the warden or markings indicating it was received by the warden and that the board of prisons personnel have not located a record of this request. [526] at 5. Hernandez does not address this discrepancy in his reply brief; instead, he merely states that he "exhausted his administrative remedies" in his introductory paragraph. [529] at 1.

A review of Hernandez's Exhibit 1 shows that it does not indicate that his request was denied or that it was received by the Federal Bureau of Prisons. [521] at 11–12. As the exhaustion requirement is mandatory, and it does not appear that Hernandez fully exhausted the administrative process, his motion must be denied. *Sanford*, 986 F.3d at 782.

## II. Extraordinary and Compelling Reason

However, even if the Court were to credit Hernandez's statement that he exhausted his administrative remedies and consider the merits of his motion, it would still be denied. After the exhaustion requirements, a defendant must "identify an 'extraordinary and compelling' reason warranting a sentence reduction[.]" *Thacker*, 4 F.4th at 576. Courts must follow the Sentencing Commission's guidance on which factors and circumstances qualify as "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A), as outlined in the corresponding policy statement, U.S.S.G. § 1B1.13. "[T]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). Hernandez seeks compassionate relief on four bases: (1) deaths in his immediate family, (2) his age and health issues, (3) harsh prison conditions, and (4) his rehabilitation efforts and low risk of recidivism.

### a. Change in Family Circumstances

Hernandez first argues that changes in his family circumstances due to the deaths in his immediate family establish an extraordinary and compelling reason for his release. His sister died on December 21, 2021, from coronary artery disease and diabetes mellitus, and his brother died on September 4, 2022, of throat cancer. [521] at 5. His mother died last year. *Id.* While the death of a family member can be considered, it is not because of the death itself, but rather because the death leaves the defendant as the only available caregiver to a minor child, spouse, or parent. U.S.S.G. § 1B1.13(b)(3). As Hernandez has not argued that the deaths in his family would leave him as the only available caregiver to anyone, it does not form a basis for release.

### b. Health Issues and Age

Next, Hernandez contends that he should be released because he is 60 years old and "suffers from high blood pressure, high cholesterol, and has a BMI of 35." [521] at 6. Hernandez does not provide medical records to support his alleged medical conditions, but the government provided his health service records with their response. *See* [527]. The government argues that the records indicate Hernandez is receiving adequate treatment for these conditions and that they do not otherwise qualify under the standards established in § 1B1.13(b)(1). [526] at 10–11.

3

The sentencing guidelines consider a medical circumstance to be an extraordinary and compelling reason when the defendant is:

**(i)** suffering from a serious physical or medical condition,

**(ii)** suffering from a serious functional or cognitive impairment, or

**(iii)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.[2]

High blood pressure and high cholesterol with a BMI of 35 do not meet these criteria as there is no suggestion that these conditions amount to a "serious physical or medical condition" that "substantially diminishes" his ability to take care of himself, much less a terminal illness or a medical condition that requires long-term or specialized care that is not being provided. U.S.S.G. § 1B1.13(b)(1)(B); *see, e.g.*, *United States v. Mendoza*, 2025 WL 1323705, at *2 (N.D. Ill. May 7, 2025) (finding diabetes, high blood pressure, high cholesterol, arthritis, sleep apnea, and back pain do not constitute an extraordinary and compelling reason when medical records show the prison is treating those conditions); *United States v. Draus*, 2025 WL 1826097, at *2 (N.D. Ill. July 2, 2025) (finding high blood pressure does not amount to an extraordinary and compelling reason). And while Hernandez argues in reply that this makes him more susceptible to increased risk of ailments like cardiovascular disease, that is also not sufficient to establish a qualifying medical condition in the Seventh Circuit. *See, e.g.*, *United States v. Henderson*, 2024 WL 277452, at *2 (7th Cir. Jan. 25, 2024) (finding no abuse of discretion in denying release when the defendant had high blood pressure, high cholesterol, and periodic shortness of breath, which were all COVID risk factors, but they were mitigated by prison conditions).

Further, Hernandez fails to allege that these conditions are not being treated and there is nothing in the records indicating that medical care is being withheld. A defendant cannot meet his burden of proving an extraordinary and compelling reason if he fails to offer sufficient evidence that he cannot receive adequate medical care. *United States v. Taylor*, 2023 WL 3145309, at *1 (7th Cir. Apr. 28, 2023); *United States v. Harmelech*, 472 F. Supp. 3d 460, 462–63 (N.D. Ill. 2020) (denying compassionate release when the defendant had diabetes, coronary artery disease, hypertension, obesity, renal disease, and high cholesterol, making him more vulnerable to serious illness or death, when the motion said nothing about his inability to receive adequate treatment).

Hernandez also argues that even though he has not reached the required age of 65, the court should consider his age in combination with the health conditions as outlined in U.S.S.G. 1B1.13(b)(2): "The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." However, Hernandez is not 65 and, as discussed above, is not suffering from a serious deterioration in physical or mental health because of the aging process. Thus, this is also not a basis on which to grant his release.

---

[2] U.S.S.G. § 1B1.13(b)(1).

4

### c. Prison Conditions

Third, Hernandez argues that due to the COVID pandemic he has experienced prison conditions "harsher than those that are ordinarily experienced by a person with his low security level." [521] at 7. While courts have recognized that COVID was a significant concern in United States' prisons at its outset, the availability of effective vaccines largely alleviated those concerns. *Barbee*, 25 F.4th at 533. Hernandez did not allege conditions beyond those normally experienced by inmates due to safety measures taken during the COVID pandemic, and typical conditions are insufficient to form an extraordinary and compelling reason for relief. *See United States v. Hanson*, 2024 WL 5134348, at *1 (7th Cir. Dec. 17, 2024) (harsh conditions due to mitigating COVID should be challenged under the Eighth Amendment and are not a basis for early release); *United States v. Fuentes*, 2025 WL 2229687, at *4 (N.D. Ill. Aug. 5, 2025) (collecting cases holding that general burdens resulting from the COVID pandemic in prisons are insufficient to form the basis for compassionate release).

### d. Rehabilitation and Low Risk of Recidivism

Finally, Hernandez contends that he has taken advantage of the opportunities to improve himself by working as an orderly, taking adult education courses, and that his last disciplinary infraction was in 2013. [521] at 1–2; [529] at 4. Also, Hernandez notes that the Bureau of Prisons regards him as having a low risk of recidivism. [521] at 2. The government does not dispute Hernandez's rehabilitation efforts but argues that those efforts alone cannot be considered an extraordinary and compelling reason for a sentence reduction. [526] at 11–12.

"[R]ehabilitation 'cannot serve as a stand-alone reason' for compassionate release." *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (quoting *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021)). But it may be considered in combination with the other factors. *Id.*; U.S.S.G. § 1B1.13(d). While Hernandez's rehabilitation efforts are laudable, they do not, in combination with the other arguments, present an extraordinary and compelling reason for his release. His rehabilitation efforts are common occurrences in federal prisons. *See, e.g.*, *Vaughn*, 62 F.4th at 1072 ("Taking classes while incarcerated is common rather than extraordinary."); *Fuentes*, 2025 WL 2229687, at *6 (denying compassionate release when the defendant completed 800 hours of teaching apprenticeship, received his GED, and served as an ESL tutor and only had one minor disciplinary infraction); *United States v. Tomkins*, 2025 WL 1042816, at *7 (N.D. Ill. Apr. 8, 2025) (denying compassionate release when the defendant had worked as a machinist in prison and had a low risk of recidivism). Thus, the Court concludes that, even when considering the factors collectively, Hernandez has not met his burden to establish an extraordinary and compelling reason to reduce his sentence.

### Conclusion

For the reasons stated above, Defendant's motion for reduction of sentence [521] is denied.

**SO ORDERED.**

Dated: October 14, 2025

_____
Sunil R. Harjani
United States District Judge